I have 10 minutes. I'd like to reserve 2 for rebuttal. Keep an eye on the clock. I will. I know that the court read the briefs. I've seen the last two arguments and you're very familiar with each brief. So I'm going to focus my time on the first issue in our brief. The issue that has to do with the Grisillas-Bolivari case, the unbunked case from the 9th Circuit. And I'd like to focus on that because the government conceded in its brief that in this case the parties did not dispute that even if Mr. Sanchez-Aguilar harbored an unreasonable belief, an unreasonable good faith belief, that would negate specific intent. I believe that's at the heart of this case because the district court, you can see from the record from our brief, the quotations, the district court was clearly struggling in its cross-examination of Mr. Sanchez. Why is that? We have to accept that concession. I'm sorry? We have to accept that concession. No, you don't. You don't have to accept that. All you have to do is... Oh, you're asking me about Mr. Sanchez. See, that is the difficult legal and factual issue in my mind. In the prior argument, you were using the words reasonable and unreasonable. Here the government concedes that even if Mr. Sanchez had an unreasonable belief, he lacked specific intent. And the district court concluded after finding all this, what we submit were findings of fact, the green folder coming up to the point of entry, unlike anything he'd done before, providing his true name, providing his prior record, providing everything, including a Mexican identification. The district court found all of those to have been unquestioned facts. Then he concluded that to believe, for Mr. Sanchez to believe that this civil lawsuit against the agents, against the Bivens action, and perhaps even this court's prior opinion in this case, those were not honest, reasonable... The specific finding that the court makes in pronouncing the verdict is the court finds that the statements made at the port of entry, Mr. Sanchez was a citizen, are untrue, that they were known to be false at the time that the statements were made. So he finds that Mr. Sanchez knew that he was not a citizen when he made it. So I'm not sure that this issue really survives the court's finding, because she found he didn't have a subjective belief that he was a citizen. Reasonable or not. Judge Collins, the district court also noted that maybe his belief, his irrational belief, was due to a mental condition. We quote the court's... But that's in like, judges say lots of things when they're developing the questioning and the rhetoric. What I read is from when he's saying, here's where I landed. Yes, and this is a very well-respected judge. And why is that a point that I need to make? Because what I see happened in this judge's verdict, he enumerates a series of acts, a series of acts that Mr. Sanchez engaged in. Then he looks at Mr. Sanchez's belief system and concludes, you know, your state of belief in this stuff is not rational. I don't think it's honest. He made a credibility finding, obviously. And that, Judge Collins, that's what you're driving at. So is this credibility finding clearly erroneous? I submit that it is, because the same judge who made a credibility finding had made an observation that there was a mental condition here. And he had ordered a mental examination of Mr. Sanchez before he changed lawyers for the third time. Is it clear error, or is it something, or is it Jackson against Virginia? Don't you have to show that if that's the finding, and I think we now agree that that's the finding that the judge made, don't you have to show that the evidence is such that no reasonable finder of fact could possibly have thought that the evidence was sufficient to show that would be an unreasonable doubt? I agree with you, Judge Miller. And I'm further adding to your statements that for Judge Correa to have found all of these actions by Mr. Sanchez, including his breaking away from the prior habits that he had, if you will, and to know that the person was troubled, and at the same time for defense counsel to suggest to the court as the court is cross-examining Mr. Sanchez to suggest further inquiry, the transcript itself yields that Mr. Sanchez was clearly, there was something irregular about him. And everyone agreed on that. So the question would be, based on the controlling law of this circuit, are you going to look at a person with a prior mental condition, with prior irrational behavior in the courtroom, to the point where there has to be a competency exam made, and then when that person testifies, that person- What was a competency exam? I'm sorry? I don't understand. What was it designed to determine? Yes. What was a competency exam trial? Thank you, Judge Corman. I believe to cooperate with counsel, there were two changes of counsel. He fired two lawyers, asked for a third. The third is appointed, and that's when there was a motion for a competency exam to see whether this person could effectively work with his lawyer. So the competency exam was performed, and then a fourth lawyer was appointed, which went to a trial counsel. And what was the result of the competency exam? Well, Judge Curiel himself, in making his own findings, is saying that, and I quote, none of that evidence made it to the record, and so I'm going to make, you know, my ruling. It was never mentioned at the trial, but there's a specter in the background that this person is not psychologically balanced. If we have that, and I don't think anyone in this case can dispute that Mr. Sanchez had psychological issues, so if you find that, and Judge Curiel did, and then you have this unique set of circumstances where the government must prove that the person's unreasonable belief, they conceded that he could be unreasonable, that is not somehow honestly held. I don't know how you do that. But now it sounds like you're describing it almost as sort of an insanity defense. I mean, like it's not about honest but mistaken belief, but that he somehow lacked the mental capacity to understand whether he was a citizen or not. I didn't understand that that was the defense that you presented to the district court, was it? Judge Miller, I did not try the case. I was appointed on appeal. That is a very unique point of view because I concluded that very fact. I first asked myself, well, what happened to the competency exam? It was found competent. But then you can be insane and you can have all kinds of psychological issues that create a reality in your brain that you honestly believe the classic example, as we all know, I'm Napoleon, I'm Jesus Christ. Now, that obviously is an honestly held delusion. My point here, the legal point, is how do you have a doctrine of law where you require the government to prove that the unreasonable belief that they admitted, you can negate specific intent, but the unreasonable belief has to be honestly held. That's a very difficult, tricky concept intellectually, I submit. And that's what makes this case different. However you might formulate that, it seems inconsistent with the explicit finding that Judge Collins quoted earlier, which was the district court found that the defendant knew that he was not a citizen. So, that finding seems to foreclose the possibility that he, incidentally or irrationally, thought that he was because the court found he knew he wasn't. Right? And we suggest, Judge Miller, why that is not a logical conclusion. You could still have Mr. Sanchez not believing he is a U.S. citizen. And they say, well, that forecloses the whole analysis. No, because then he engages in conduct, nonverbal communication, as it were, with his green folder. He shows up at the port of entry, announces his true name, presents the green folder with what he believes to be evidence that he's entitled to derivative citizenship. Not that he has it. He knows he doesn't have it. That's why he gathered all the evidence as he described it, even the district court described it. He believed that was his evidence. So, even if you find that, those actions by Sanchez, they're not irreconcilable with him knowing that he's not entitled to citizenship because he hasn't been perfected, but that he has the right to petition. And that's precisely what he did here. Now, let's put it in context. The crime for which he was convicted is not for having an irrational belief. It's for attempted unlawful reentry without inspection. Here he clearly submitted himself to inspection. All three agents who testified at trial conceded that point. So then you have a very simple conclusion. How do you apply this case that is binding in this district, this case where you can concede an unreasonable belief? You've gone over your time. We'll give you a minute. We'll hear from the government now. Mr. Hawley. Good morning. May it please the court, Benjamin Hawley for the United States. This was not an insanity defense case. Mr. Sanchez was not a citizen when he said that he was and tried to enter the country, and he knew he was not a citizen. The district court made that finding very specifically at page 234 and 335 of the record, that his claimed belief was not credibly, truthfully, and honestly held. The court pointed to a bevy of evidence supporting that. And this was also not a situation where Mr. Sanchez had come to the border to figure out his status or claiming that he had status or seeking to work on some paperwork. He claimed, let me ask you a question about the court's finding that you just referenced and that I quoted before, because he does seem to make the very specific and clear finding that he knew that the statement that he was a citizen was false at the time it was made. But then he goes on and makes the following comment. He says, and that as such. So the court finds and makes the first finding and then further finds that as such, the defense that Mr. Sanchez believed he was a citizen and did not need the permission of the Attorney General before attempting reentry is not established. That sounds like burden shifting. You know, the finding is fine if it's made under the right standards. But the question is whether or not he understood that this was the government's burden to prove beyond a reasonable doubt rather than the defense's burden to establish. And so tell me why you think he didn't get the standard wrong. Of course. So two responses. The first is the government in its closing argument had been clear that this was not an affirmative defense. In fact, specifically said, this is not an affirmative defense. The government retains the burden at all times. It's a specific intent case. The second response is this, of course, was an oral ruling from the bench. And so I agree that that's not precisely how we want to phrase, how we expected the court to phrase that finding. But given the entire context and, again, particularly the government agreeing this was not an affirmative defense case and that we're making that argument, I think it would be incorrect to apply that level of precision on that single comment when the rest of the comments make it clear that the court went through every one of the factors, went through all of the elements, and talked about how the government had proven the case. So this was not a burden-shifting situation given that context. In addition, the facts that the court was pointing to indicate that Mr. Sanchez's belief was not honestly held, not only the credibility finding that the district court made, but Mr. Sanchez's, the facts that he was relying on to make this argument. So he said he formed this belief in 2010. Yet after that, he was removed from the United States and told he could never return. Despite that, he came back illegally by jumping the fence, was arrested, tried, convicted, appealed to the Ninth Circuit, and that was affirmed. And nowhere in that process did he claim to be a citizen. And then in 2015, he applied for a border crossing card, a type of visa that was for Mexican citizens only. And again, in that process, never claimed to be a citizen. The closest the court got, or the best evidence the court pointed to for his defense, was that there were some indicators he may have thought he might be able to apply for status. But, of course, status is a step short of citizenship. And that's why, then, the court said, at page 218 to 119 of the record, that if things become harder for Mr. Sanchez, when you consider that he said, I'm a U.S. citizen, he wasn't saying, I have status or I might have status. He was saying, I'm a citizen. The border officer testified to that. Mr. Sanchez testified to that. In fact, his counsel kind of clarified, doubled down on that. Is that the word you used, citizen? And he said, yes. He was trying to talk his way through the border. It didn't work. All this paperwork with him, none of it said he was a citizen. And that's why he was convicted of the false statement and attempting to illegally re-enter the United States. I'm happy to answer any other questions if the court has any. Otherwise, it looks like we don't. So, thank you, counsel. Mr. Cortez, one minute. Very brief. The burden-shifting issue is very, very central because of what you, Judge Collins, just asked. The exact findings by the district court is so, saying this to the parties, so there are some indicators that would suggest that at the time that Mr. Sanchez Aguilar entered the United States, he entertained a good faith belief that he may be entitled to obtain legal status. Then the district court goes and says what my distinguished colleague here says, that that would be one thing, but then he goes and says, you're a citizen. So, when we take those two together, you are requiring a person with not no legal training to specifically describe what he is there with the Board of Entry seeking. And I would suggest that he showed up at the Board of Entry with his true identity, his prior record, his prior deportations, the prior opinion of this court, seeking inspection. Did he believe he had a right to citizenship? Yes. Did he say, I'm a U.S. citizen? Yes. But at the same time, he's trying to be inspected to make sure that he has derivative citizenship, not birth citizenship, derivative from his mom's application and wife's application, which were then pending at the time of the trial. So, the issue is more nuanced than whether he said, yeah, I'm a U.S. citizen, I'm blind, I'm trying to get away with it. How could he talk himself out of it with a sophisticated agent, Soto, who admitted across examination that his inspection of Mr. Sanchez was, quote, very fast, and he referred him to secondary. So, with that, I submit. Thank you, Mr. Cortez. We thank both counsel for their arguments. I think the case is submitted. We will now take a brief eight-minute recess. Hello, guys.
judges: MILLER, COLLINS, Korman